UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CASE NO.  1:21-cv-271

| | |
|---|---|
| ANDREW LABRECHE,<br><br>                Plaintiff,<br><br>   vs.<br><br>DAVID CHAMBERS, in his individual and official capacity, TOMMY DAVIS, in his individual and official capacity, ROBERT MARTELLE, in his individual and official capacity, ELLEN SHELLEY, in her individual and official capacity, MICHELLE MCENTIRE, in her individual and official capacity, TED BELL, in his individual and official capacity, RUTHERFORD COUNTY SHERRIFF'S OFFICE, CHRIS FRANCIS, in his individual and official capacity, CHAD MURRAY, in his individual and official capacity, JAMIE MODE, in his individual and official capacity, WILMER CHAVEZ-PEREZ, in his individual and official capacity, TYLER GREEN, in his individual and official capacity, and JOHN DOES [1-15], in their individual and official capacities<br><br>                Defendants. | **DEFENDANTS RUTHERFORD COUNTY SHERIFF'S OFFICE, CHRIS FRANCIS, JAMIE MODE, WILMER CHAVEZ-PEREZ, AND TYLER GREENE'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)** |

## I.    <u>INTRODUCTION</u>

The Complaint in this matter is brought under 42 U.S.C. § 1983, along with

supplemental state claims, by Andrew LaBreche, a licensed North Carolina attorney,

who alleges that Rutherford County judicial officials and employees of the

Rutherford County Sheriff's Office engaged in a conspiracy against him in

retaliation for his investigation of allegedly wrongful conduct by all Defendants. *See* DE 1-1.

Plaintiff has sued the Rutherford County Sheriff's Office, Rutherford County Sheriff Chris Francis, and Rutherford County sheriff's deputies Chadd Murray,[1] Jamie Mode, Wilmer Chavez-Perez, and Tyler Greene in their individual and official capacities (referred in the Complaint as the "Police Defendants). *Id*. at pp. 1-2. Plaintiff has also sued the following North Carolina Judges in their individual and official capacities: Tommy Davis, Resident Superior Court Judge for North Carolina Judicial District 29A, *id*. at ¶ 5; Robert Martelle, Chief District Court Judge for North Carolina Judicial District 29A, *id*. at ¶ 6.; Ellen Shelley, Associate District Court Judge for North Carolina Judicial District 29A, *id*. at ¶ 7; Michelle McEntire, Associate District Court Judge for North Carolina Judicial District 29A, *id*. at ¶ 8 (collectively "Judiciary Defendants."). Last, Plaintiff has sued David Chambers, an attorney in North Carolina Judicial District 29A, *id*. at ¶ 4, and Ted Bell, District Attorney for North Carolina Judicial District 29A, *id*. at ¶ 9.

In his Complaint, Plaintiff sets forth the following ten claims for relief:

First Claim for Relief: Declaratory judgment and/or injunctive relief pursuant to N.C. Gen. Stat. § 143-318.16 – §143-318.16A against the Judiciary Defendants

---

[1]  Murray has not been served with the Complaint.

and Bell, including myriad allegations of impropriety related to their activities as the "Judicial Council". *Id.* at ¶¶ 117-128;

Second Claim for Relief: Constitutional claims against the Judiciary Defendants and Bell arising from various violations of the North Carolina Constitution related to alleged coordinated actions by the Judicial Council to intentionally infringe on Plaintiff's constitutional rights and harm Plaintiff's legal practice. *Id.* at ¶¶ 129-146;

Third Claim for Relief: Tortious interference with a contractual relationship against all Defendants. *Id.* at ¶¶ 147-164. Specifically, Plaintiff alleges that the Police Defendants improperly threatened and enticed some of Plaintiff's legal clients to terminate their legal relationships with Plaintiff via alleged promises to forego legal prosecutions against the clients "and/or to obtain other legal favors by Police Defendants." *Id.* at ¶¶ 155-158;

Fourth Claim for Relief: Violations of the North Carolina Electronic Communications Act against all Defendants. *Id.* at ¶¶ 165-179. Specifically, Plaintiff alleges that the Police Defendants, among other Defendants, improperly procured, reviewed, utilized and disseminated certain of Plaintiff's electronic communications, including audio recordings of conversations to which Plaintiff was a party. *Id.*;

Fifth Claim for Relief: Civil conspiracy against all Defendants to obtain information concerning Plaintiff for the alleged purpose of preventing Plaintiff's investigation into Defendants' actions and to "punish and/or retaliate against Plaintiff for his involvement into the investigations and public exposure" of alleged wrongdoing by all Defendants. *Id*. at ¶¶ 180-190;

Sixth Claim for Relief: Abuse of Process against all Defendants alleging, *inter alia*, that Police Defendants were arresting individuals for the purpose of acquiring information regarding Plaintiff's investigations of the Defendants and acquiring damaging information regarding Plaintiff. *Id*. at ¶¶ 191-202;

Seventh Claim for Relief: Invasion of privacy against all Defendants, including allegations that Police Defendants improperly obtained search warrants for the purpose of acquiring attorney-client privileged information from Plaintiff. *Id*. at ¶¶ 203-212;

Eighth Claim for Relief: 42 U.S.C. § 1983 claim alleging Fourth and Fourteenth amendments violations against all Defendants related to unreasonable searches and seizures. *Id*. at ¶¶ 213-226;

Ninth Claim for Relief: 42 U.S.C. § 1983 claim alleging First and Fourteenth amendments violations against all Defendants related to alleged retaliatory actions done for the purpose of censoring and punishing Plaintiff. *Id*. at ¶¶ 227-240; and

4

<u>Tenth Claim for Relief</u>: 42 U.S.C. § 1983 claim alleging *Monell*[2] violations against Rutherford County Sheriff's Office and Sheriff Francis for failure to "properly train, supervise, and discipline its employees". *Id*. at ¶¶ 241-257.

The Police Defendants are entitled to dismissal of all claims for relief. There are no factual allegations showing that 1) Plaintiff's Fourth Amendment rights were violated by any or all of the Police Defendants; 2) Plaintiff's First Amendment rights were violated by any or all of the Police Defendants; and 3) the Rutherford County Sheriff's Office and Sheriff Chris Francis failed to properly to properly execute their duties such that they permitted unconstitutional policies or procedures within their office which caused harm to Plaintiff. As the Plaintiff's state tort claims are based upon the same alleged wrongful conduct, this Court should exercise supplemental jurisdiction over the state claims and dismiss the Plaintiff's remaining state claims with prejudice.

## II.    <u>STATEMENT OF THE FACTS</u>

### A.    <u>PLAINTIFF ANDREW LABRECHE'S INVESTIGATION</u>

Plaintiff is a practicing attorney who resides in Rutherford County, North Carolina. *Id*. at ¶ 3. On November 25, 2020, Plaintiff sent a twelve-page letter bearing his firm's letterhead, Woodridge Law, to the Office of Investigations of the

---

[2] *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018 (1978).

Department of Homeland Security (hereinafter "DHS"). *See* Exhibit R to Complaint. The letter detailed the allegedly unlawful actions and practices of the Police Defendants who Plaintiff asserted were already being investigated by both the North Carolina State Bureau of Investigation and the Federal Bureau of Investigation. *Id*. at 1. Plaintiff called on DHS to start an independent investigation into DHS Agent Joseph Magilton, as Plaintiff alleged Magilton was jointly participating with the Police Defendants in an "increasingly sophisticated racketeering scheme". *Id*. at 2. As detailed by Plaintiff's letter to DHS, and the allegations in the Complaint, Plaintiff apparently took substantial steps to conduct an independent investigation into the Police Defendants, based on claims from "many" of his clients that the Police Defendants were "abusive, threatening, and unlawful" in their dealings with his clients. *Id*. at 1; Complaint at ¶ 43. Plaintiff believes that his investigation caused Police Defendants to engage in unlawful and retaliatory practices against him.

### B. THE ALLEGED UNLAWFUL SHERIFF'S PRACTICES

Plaintiff has alleged that the Police Defendants have abused their power by mistreating confidential informants and failing to conform to proper standards and practices (*Id*. at ¶¶ 44 v, w, x, y, z, bb, cc, ee, ff, gg, hh), including "[d]eaths of informants…in highly suspicious circumstances" (*Id*. at ¶ 44 dd), and failing to document drug seizures (*Id*. at ¶ 44 aa). Plaintiff alleges, without any elaboration,

that Mode, Greene, and Chavez-Perez "were among the deputies most often and intimately involved in these practices." *Id*. at ¶ 46. In fact, this is the only allegation against Mode in the entire Complaint. The only other allegation against Chavez-Perez in the Complaint is that someone described Chavez-Perez making "inappropriate sexual advances" based on a recording from a dead person. *Id*. at ¶ 45z. Plaintiff also alleges that at an unspecified time and manner, the Police Defendants learned that Plaintiff, "along with other individuals", was independently investigating the Police Defendants. *Id*. at ¶ 49.

### 1. The Trevor Pittman Search and Seizure

According to the complaint, the Police Defendants then targeted Trevor Pittman, a bail bondsman, "one of the individuals assisting with the efforts to identify and address the unlawful police practices at issue." *Id*. at ¶ 50. The Police Defendants then allegedly used the coerced and false testimony of Daniel Lancaster to fraudulently obtain a search warrant for Pittman's electronic devices for the sole purpose of determining the information Pittman "and Plaintiff" had in their possession regarding Police Defendants. *Id*. at ¶¶ 51-55. On July 31, 2020, Pittman's computer, phone, and "a number of paper files entirely unrelated to the warrant being executed" were seized by Police Defendants; Agent Magilton was also

present during the Pittman search. *Id.* at ¶¶ 56, 66.[3] The only other factual allegation against Greene, other than being "often and intimately involved" in "unlawful practices," (*id.* at ¶ 46), is that he allegedly apologized to Pittman for this search. *Id.* at ¶¶ 68-72. According to Plaintiff, Police Defendants searched beyond the scope of the warrant, and seized, reviewed and "distributed electronic communications between Plaintiff and Pittman to all Defendants". *Id.* at ¶¶ 72-73. During the search of Pittman's electronic devices, Defendants allegedly reviewed messages showing Plaintiff was meeting with the United States Drug Enforcement Agency, conversations between Plaintiff and Tina VanBuskirk, and conversations between Plaintiff and Pittman regarding the need to send information to two outside investigatory agencies. *Id.* at ¶¶ 72, 74-75.

While detained in Agent Magilton's vehicle, Pittman informed Agent Magilton of various unlawful practices of Police Defendants, which Agent Magilton stated he would like to discuss with Pittman at a later date. *Id.* at ¶¶ 61-62. Plaintiff later discussed these practices by Police Defendants with Agent Magilton and his DHS supervisor, who instructed Agent Magilton to investigate Police Defendants.

---

[3] The search warrant was related to a restraining order against Pittman, with Lancaster having informed Police Defendants that Pittman was wearing a gun when executing an arrest of Lancaster's girlfriend, a violation of the terms of Pittman's restraining order. *See* Exhibit R at 6. The apparent purpose of the search warrant was to recover Pittman's body camera footage from that arrest to see if Pittman had, in fact, been wearing his gun in violation of the restraining order. *Id.*

*Id*. at ¶¶ 78-80.  Plaintiff provided to Agent Magilton "several names of individuals with specific information as to the unlawful practices of Police Defendants."  *Id*. at ¶ 81.

### 2.  Threats by Police Defendants

Those individuals were then each approached jointly by Agent Magilton and Police Defendants, who "threatened them to recant all of their testimony regarding the unlawful conduct of Police Defendants or, alternatively, be charged with unidentified federal charges."[4]  *Id*. at 82.  These meetings took place outside the presence of Plaintiff, and without notice to Plaintiff, although Plaintiff "represented most of those individuals" and Police Defendants "instructed these individuals not to inform Plaintiff that Agent Magilton and Police Defendants had spoken with (and threatened) them."  *Id*. at ¶ 83.

Police Defendants also allegedly acted to retaliate against Plaintiff for his independent investigation by "threatening Plaintiff's clients" and "threatening Plaintiff directly".  *Id*. at 234.  Threats against Plaintiff's clients included warnings that Police Defendants would "fabricate charges and/or plant evidence".  *Id*. at ¶ 45(y).  Threats against Plaintiff's clients also included "threatening and enticing many of Plaintiff's current clients to terminate legal relationships with Plaintiff in

---

[4] This allegation incorporates Exhibit P to the Complaint, although no Exhibit P was attached to the Complaint served on Police Defendants.

order to avoid legal prosecutions and/or to obtain other legal favors by Police Defendants." *Id.* at ¶ 155. Plaintiff adds that one of his clients, media outlet *RC Catalyst*, published articles about the allegedly unlawful practices of Police Defendants and that the articles "were published pursuant to the rights and protections afforded to both RC Catalyst and Plaintiff". *Id.* at ¶ 231. Based on the information that "Plaintiff was assisting with the investigations and assembly of information" that "RC Catalyst had reported through one or more articles", Police Defendants took action to "stop further information from being made public and/or provided to outside investigators, as well as to punish Plaintiff (and others)." *Id.* at ¶¶ 232-233. Plaintiff does not provide any detail as to the alleged threats made directly to him by Police Defendants.

### 3. Kyle Whitley Interview

Kyle Whitley was detained and interviewed by Police Defendants and Agent Magilton and "only asked questions about Plaintiff". *Id.* at ¶ 85. Police Defendants wanted to know, for example, who Plaintiff was working with, who was on Plaintiff's team, what Plaintiff knew, whether Plaintiff has someone "inside the Sheriff's Office", and requested Whitley to provide damaging evidence against Plaintiff "even if fabricated". *Id.* at ¶¶ 85 (ii-mm).

### 4. Cell-Site Simulators

10

Plaintiff makes the allegation four times that Police Defendants improperly employed the use of "cell-site simulators" to "unlawfully monitor the communications of Plaintiff and other [sic] assisting with these investigations. *Id.* at ¶ 93. *See also*, ¶¶ 186, 201 and 216. Plaintiff does not describe the circumstances wherein Police Defendants allegedly employed the use of cell-site simulators to monitor the Plaintiff's communications.

## III.    <u>ARGUMENT</u>

To survive a motion to dismiss, the factual allegations in the Plaintiff's complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965 (2007). The complaint must contain enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009), *quoting Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949, *quoting Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965.

This "factual content" must be "more than an unadorned, the defendant-unlawfully- harmed-me accusation." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949-50. As the Court emphasized in *Iqbal*, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim.

*Id*. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. While the court may accept factual allegations in a complaint as true and considers the facts in the light most favorable to the plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments*." Eastern Shore Market Incorporated v. J.V. Associates, LP*, 213 F.3d 175, 180 (4th Cir. 2000). [Document 1, ¶¶ 25, 27].

In addition, in order to establish liability under § 1983, the Plaintiff must affirmatively show that the Police Defendants "acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (internal citations omitted). As a result, there must be some allegation of wrongdoing or involvement against them to assert an individual capacity claim against them. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir.1997) ("liability will lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights."). There are no factual allegations that any of the Police Defendants were involved in any violations of Plaintiff's rights, and therefore the section 1983 claims should be dismissed.

### A.    EIGHTH CLAIM FOR RELIEF:    FOURTH AMENDMENT CLAIM

Plaintiff's eighth claim for relief is brought pursuant to the Fourth and Fourteenth Amendments to the U.S. Constitution, and Article 19 of the North

Carolina Declaration of Rights. Both the state and federal Constitutional claims are brought on the same theory: in executing search warrants signed by a Judge, the Police Defendants violated Plaintiff's Constitutional rights. Complaint, ¶¶ 213-226. Plaintiff's scattershot allegations under his eighth claim for relief for both the state and federal Constitutional claims are wholly unsupported by both the law and the facts alleged. *See State v. Petersilie*, 334 N.C. 169, 184, 432 S.E.2d. 832, 841 (1993) (interpreting state and federal Constitutional claims the same).

"The protections of the Fourth Amendment are triggered when an individual seeking refuge under the Fourth Amendment 'has a legitimate expectation of privacy in the invaded place' or the item seized." *Doe v. Broderick*, 225 F.3d 440, 450 (4th Cir. 2000) (quoting *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)). "A legitimate expectation of privacy exists when the individual seeking Fourth Amendment protection maintains a subjective expectation of privacy in the area searched that society is willing to recognize as reasonable." *Id*. (cleaned up).

1. Attorney-Client Privileged Documents and Communications

It is the client, not the attorney, who is the holder of the attorney-client privilege. *Hawkins v. Stables*, 148 F.3d 379, 384 (4th Cir. 1998). The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of

the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982). The burden is on the proponent of the attorney-client privilege to demonstrate its applicability. *Id.*

Claims by a party that conversations intercepted by the government violate the subjective expectation of privacy for attorney-client communications require a showing that the conversations were made in furtherance of the attorney-client relationship. *See*, *e.g.*, *Gennusa v. Canova*, 748 F.3d 1103, 1111 (11th Cir. 2014) ("Given that the intercepted conversations had to do with the ongoing criminal investigation of Mr. Studivant by Det. Marmo, they fell squarely within the attorney-client privilege.").

In support of his eighth claim for relief, Plaintiff states Police Defendants "have engaged in relentless efforts to obtain attorney-client privileged information from Plaintiff, Plaintiff's clients, and individuals that Plaintiff has worked on the investigations discussed herein by unlawfully searching and seizing information

14

through the unlawful use of search warrants, arrests, access of electronic communications and accounts, and cell-site simulators". *See* Complaint at ¶ 216.

Here, Plaintiff was not the party subject to the allegedly improper search executed by Police Defendants; Trevon Pittman was. Trevor Pittman, Plaintiff's alleged client, has not filed a claim against the Police Defendants. Plaintiff has not made any attempt to establish that he and Pittman were in an attorney-client relationship, and no facts are presented to show when the alleged relationship was formed or why Pittman sought to engage Plaintiff has his counsel. Most importantly, Plaintiff's allegations reveal that the intercepted communications had nothing to do with an attorney-client relationship, and therefore Plaintiff had no subjective expectation of privacy as to those communications.

Plaintiff alleges that his communications with Pittman included his text messages to Pittman that he was meeting with the United States Drug Enforcement Agency "discussing these issues" related to their independent investigation of the Police Defendants. These allegations do not meet the plausibility requirement for a facially valid pleading under *Twombly* and *Iqbal*. All the allegations show is that Plaintiff and others were allegedly conducting an independent investigation of the Police Defendants that included the consistent and voluntary exchange of information regarding their investigation with each other and third parties, including the United States Drug Enforcement Agency. As such, these communications are

not attorney-client communications which are entitled to a subjective expectation of privacy.

Plaintiff also alleges that during the search of Pittman's electronics, Police Defendants improperly obtained communications between Plaintiff and Tina VanBuskirk. Plaintiff is not entitled to the subjective expectation that his conversation with VanBuskirk was protected the attorney-client privilege in light of the conversation being in Pittman's possession, which is how Police Defendants obtained the conversation. Any such expectation of privacy was waived when Plaintiff and/or VanBuskirk agreed to share the substance of their communications with Pittman, a third party. Accordingly, this fact does support a showing of a violation Plaintiff's Fourth Amendment rights.

Another discovered communication between Pittman and Plaintiff explained that "the information needed to be immediately sent to two outside investigatory agencies (and it was), thereby leaving no questions as to the purpose of why this information was assembled." *See* Complaint at ¶ 75. While questions remain as to the purpose of Plaintiff's independent investigation of Police Defendants, there is no question that Plaintiff and Pittman waived any attorney-client privilege as to those communications when they sent the information to two unnamed "outside investigatory agencies." Again, Plaintiff cannot then prove a subjective expectation of privacy in those communications. The substance of the communications was

willfully, voluntarily and repeatedly disseminated to third parties by Plaintiff and/or his alleged clients, thereby waiving the protection of the attorney-client privilege.

Finally, Plaintiff tries to buttress his Fourth Amendment claims with conclusory assertions that Police Defendants unlawfully employed the use of cell-site simulators to secretly monitor Plaintiffs communications. These allegations also utterly fail to meet the *Twombly* and *Iqbal* pleading requirement of plausibility. No times, dates, locations or specific communications are presented to support the cell-site simulator allegations. Allegations lacking even a modicum of factual specificity cannot establish plausibility. As the Supreme Court stated: "a plaintiff ... must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676, 129 S.Ct. at 1948. The Plaintiff has failed to do so, and as his eighth claim for relief is devoid of any allegations which satisfy the plausibility pleading requirement, it should be dismissed with prejudice.

## B. NINTH CLAIM FOR RELIEF: FIRST AMENDMENT CLAIM

Plaintiff's ninth claim for relief sets forth a First Amendment retaliation claim against all Defendants. Plaintiff claims his investigation into the alleged unlawful practices of Police Defendants resulted in retaliatory actions such as seizing information from Plaintiff, Plaintiff's clients, and other individuals for the purpose of violating Plaintiff's First Amendment rights. *See* Complaint at ¶ 233.

17

A First Amendment retaliation claim under 42 U.S.C. § 1983 requires a showing of three elements: (1) the plaintiff engaged in constitutionally protected First Amendment activity, (2) the defendant took an action that adversely affected that protected activity, and (3) there was a causal relationship between the plaintiff's protected activity and the defendant's conduct. *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 537 (4th Cir. 2017). "For purposes of a First Amendment retaliation claim under § 1983, a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) quoting *Washington v. County of Rockland*, 373 F.3d 310, 320 (2d Cir. 2004)).

The thrust of Plaintiff's factual basis for this allegation is that Police Defendants colluded with Plaintiff's clients or potential clients, allegedly encouraging them take certain actions, including "not to speak with Plaintiff", "not retain Plaintiff to represent them", and to provide to Police Defendants "information (even if fabricated) that Police Defendants could use to pursue any criminal charges to silence Plaintiff." *See* Complaint at ¶ 93. Plaintiff adds that "Police Defendants have interfered with contractual relations between Plaintiff and his clients by threatening and enticing many of Plaintiff's current clients to terminate legal relationships with Plaintiff" and that "Plaintiff had contractual relationship[s] (as well as attorney-client relationships that are contractual in nature) with many clients

18

that, after being threatened and/or enticed by Police Defendants terminated such relationship with Plaintiff." *Id*. at ¶¶ 155-156. Plaintiff claims that Police Defendants took these alleged actions because they "knew of the contractual relationships", and "Plaintiff has suffered significant financial harm" as a result of these actions. *Id*. at ¶¶ 157, 159. These facts are insufficient to establish that Police Defendants retaliated against Plaintiff such that Plaintiff has a cognizable claim under § 1983.

Plaintiff has not provided the name of a single client who has terminated his or her relationship with Plaintiff, information which would be uniquely in the possession of Plaintiff. Rather than provide any such example, Plaintiff merely offers that "many" of his clients have terminated their attorney-client relationships with him as a result of Police Defendants' alleged retaliation. *See* Complaint at ¶ 155. Plaintiff has similarly failed to offer any facts to show that Police Defendants manufactured, or attempted to manufacture, evidence in retaliation of Plaintiff's independent investigation. Plaintiff's failure to provide any facts prevents a finding that it is plausible that Police Defendants retaliated in such a way as to deter a person of ordinary firmness from exercising his First Amendment rights. *See, e.g., Johnson v. Allen*, 416 F. Supp. 3d 550, 563–64 (E.D.N.C. 2018) ("Johnson has not plausibly alleged that Allen, Fuller, Hodges, Simmons, and Highsmith manufactured false evidence, much less that they did so in retaliation for Johnson's exercise of his First

Amendment rights. Johnson's vague and conclusory allegations are insufficient to survive a motion to dismiss."). The ninth claim for relief is nothing more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" that should be dismissed with prejudice. *Twombly*, 550 U.S. at 555, 127 Ct. at 1965.

### C.  TENTH CLAIM FOR RELIEF:  *MONELL* CLAIMS

In his tenth claim for relief, Plaintiff seeks to recover damages under 42 U.S.C. § 1983 for *Monell* claims against the Rutherford County Sheriff's Office ("RCSO") and Sheriff Francis for their allegedly unconstitutional policies and customs, and failure to properly train or supervise members.  *See* Complaint at ¶¶ 241-257.  This claim should be dismissed for several reasons.

First, the RCSO is a nonsueable entity. The capacity of an entity to sue or be sued is "determined by the law of the state where the court is located."  Fed. R. Civ. P. 17(b).  It is well established in North Carolina that "unless a statute provides to the contrary, only persons in being may be sued.  [citations]."  *Coleman v. Cooper*, 89 N. C. App. 188, 192, 366 S.E.2d 2, 5 (1988).  As there is no statute authorizing suit against RCSO, it is entitled to dismissal as a matter of law.  *Parker v. Bladen County*, 583 F.Supp.2d 736, 740 (E.D.N.C. 2008) (Bladen County Sheriff's Office is a nonsueable entity

Second, it is well-established that there can be no municipal liability without an underlying violation of the Plaintiffs' right's. *Grayson v. Peed*, 195 F.3d. 692,

697 (4th Cir. 1999) ("[a]s there are no underlying constitutional violations by any individual, there can be no municipal liability."). As set forth above, the Plaintiff's constitutional rights were not violated. Therefore, there can be no finding of municipal liability under *Monell*.

Third, even if there was an underlying violation, Plaintiff's *Monell* claims fail because there are no factual allegations that a policy or custom violated his rights. Liability only attaches to Sheriff Francis if the deprivation of Plaintiff's constitutional rights were caused by an official policy or custom. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035-2036 (1978); *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir.1999).

A policy or custom under *Monell* may arise in four ways:

(1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (*quoting Carter v. Morris*, 164 F.3d. 215, 217 (4th Cir. 1999).

The Supreme Court has made it abundantly clear that a plaintiff seeking to impose *Monell* liability bears a heavy burden: "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an

employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee. [citation]." *Bd. of County Com'rs of Bryan County v. Brown*, 520 U.S. 397, 405, 117 S.Ct. 1382, 1389 (1997). The Fourth Circuit has confirmed that "[t]he substantive requirements for proof of municipal liability are stringent." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994). The "first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197, 1203, 103 L. Ed. 2d 412 (1989)

Plaintiff alleges two theories under *Monell*. First, that RCSO and Sheriff Francis failed to "train, supervise, investigate, and discipline" RSCO officers. *See* Complaint at ¶¶ 245(a-e). This failure was related to the unlawful procurement and use of search warrants, the detention, interrogation and arrest of individuals "with no reasonable suspicion and/or probable cause", unreasonable searches and seizures, and the failure to investigate and/or discipline RSCO officers who engaged in said unlawful practices. *Id.* Plaintiff's second *Monell* theory is that this "unconstitutional behavior" was "tacitly or overtly sanctioned" and part of a "policy, pattern of practice, or custom, whether formal or informal", and that RSCO and

Sheriff Francis "failed to take sufficient remedial actions to end this policy". *Id*. at ¶¶ 253-255.

As one district court noted, "merely asserting that a custom or practice of misconduct exists thus is not sufficient to state a claim for municipal liability after *Iqbal*. To meet this standard, plaintiffs must allege some factual content permitting a reasonable inference of multiple incidents of prior violations." *Horton v. City of Raleigh*, 2016 WL 2901743 at * 5 (E.D.N.C. 2016) (unpublished). Plaintiff only cites to one example within the allegations under his tenth claim for relief, that Defendant Murray "obtained a search warrant to seize communications between Plaintiff and one of his clients" and that Murray "reviewed these communications obtained through a search warrant. *Id*. at ¶¶ 250-251. Plaintiff then alleges that Murray "utilized these same conversations to collude with Defendant Bell to file criminal charges against that client" for the "sole purpose of preventing this client from continuing to provide information regarding Police Defendants unlawful practices." *Id*. at ¶ 251. While Plaintiff has also cited to the Trevor Pittman search, discussed above, neither of these examples establish a "direct causal link" between the "municipal policy" and "alleged constitutional deprivation". *City of Canton* at 385. Because Plaintiff has not presented evidence of a formal or informal policy, nor any facts to establish direct harm to Plaintiff as a result of this policy, his tenth claim fails.

### D.    **PLAINTIFF'S STATE CLAIMS**

Defendants respectfully request that this Court exercise its discretion under 28 U.S.C. § 1367 (c )(3) and retain jurisdiction over the Plaintiff's state claims, and then dismiss them with prejudice. Requiring the Defendants to waste additional time and effort to address these ridiculous allegations in state court would not be convenient or fair to the Defendants. *Shanaghan v. Cahill*, 58 F.3d. 106 ,110 (4th Cir. 1995).

The same unsupported allegations which form the basis for the Plaintiff's federal claims-  alleged interference with attorney client relationships, review of tapes seized pursuant to a search warrant, and retaliation due to Plaintiff's "investigation"- form the basis for the Plaintiff's state claims of tortious interference with contractual relationship, violation of N.C.G.S. § 15A-286, civil conspiracy, abuse of process, and invasion of privacy.  Complaint, ¶¶ 147-257.

As set forth earlier, there are no factual allegations that the Police Defendants did anything to violate Plaintiff's rights.  Plaintiff alleges that Mode, Greene, and Chavez-Perez were known to engage in improper conduct, but fails to allege any facts to support these allegations, much less tie the "improper conduct" to any tortious conduct against him.  The lack of specific allegations in Plaintiff's Complaint is underscored by the fact that in Plaintiff's sixty-two page complaint, Mode is mentioned twice, (Complaint, ¶¶ 13, 46), Chavez-Perez is mentioned three

times, (*id.* at ¶¶ 14, 45z, 46,) Greene is mentioned eight times, (*id* at ¶ 15, 46, 68-72, 168), and Sheriff Francis is mentioned twice (id. at ¶¶ 11, 244). In none of these paragraphs does Plaintiff allege any facts tying any of the Police Defendants to tortious conduct against him.

## IV.    <u>CONCLUSION</u>

Plaintiff's Complaint is plagued by factual and legal shortcomings and does not meet the plausibility requirement for pleading claims. The Police Defendants respectfully request its Motion to Dismiss be granted and Plaintiff's Complaint be dismissed with prejudice.

Respectfully submitted this 28th day of October, 2021.

/s/Sean F. Perrin
Sean F. Perrin
N.C. State Bar No. 22253
Alexander J. Buckley
N.C. State Bar No. 53403
WOMBLE BOND DICKINSON (US) LLP
301 South College Street, Suite 3500
Charlotte, North Carolina 28202-6037
Telephone: 704-331-4992
Facsimile: 704-338-7814
Sean.Perrin@wbd-us.com
Alex.Buckley@wbd-us.com

*Attorneys for Defendants Rutherford County*
*Sheriff's Office, Chris Francis, Jamie Mode,*
*Wilmer Chavez-Perez and Tyler Greene*

25

## CERTIFICATE OF SERVICE

I hereby certify that on October 28 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and mailed a copy to:

Andrew Labreche
Woodridge Law
134 Taylor St.
Rutherfordton, NC 28139
*Attorney for Plaintiff (Pro Se)*

David Chambers
P.O. Box 1082
Rutherfordton, NC 28139

This the 28th day of October, 2021.

/s/Sean F. Perrin