UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:21-cv-271-MOC-WCM

| | |
|---|---|
| ANDREW LABRECHE, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | |
| ) | |
| DAVID CHAMBERS, et al., ) | **ORDER** |
| ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**THIS MATTER** comes before the Court on the following Motions to Dismiss: a Motion to Dismiss filed by Defendant David Chambers, (Doc. No.7); a Motion to Dismiss filed by Defendants Wilmer Chavez-Perez, Chris Francis, Tyler Greene, Jamie Mode, and the Rutherford County's Sheriff's Office, (Doc. No. 9); a Motion to Dismiss filed by Defendant Chad Murray, (Doc. No. 14); and a Motion to Dismiss for Failure to State a Claim and for Lack of Jurisdiction, (Doc. No. 19), filed by Defendants Ted Bell, Tommy Davis, Robert Martelle, Michelle McEntire, and Ellen Shelley.

I.     **BACKGROUND**

Plaintiff Andrew LaBreche, a licensed North Carolina attorney, filed this action under 42 U.S.C. § 1983 along with supplemental state claims. Plaintiff originally filed the action in Rutherford County state court, but Defendants removed the action to this Court based on federal question jurisdiction under 28 U.S.C. § 1331.

In a 131-page Complaint, Plaintiff alleges that Rutherford County Sheriff's Deputy Chadd Murray, along with Rutherford County judicial officials and other employees of the

1

Rutherford County Sheriff's Office engaged in a conspiracy against him in retaliation for his investigation of allegedly wrongful conduct by all Defendants. (Doc. No. 1-1). Plaintiff has also sued the Rutherford County Sheriff's Office ("RCSO"), Rutherford County Sheriff Chris Francis, and RCSO deputies Jamie Mode, Wilmer Chavez-Perez, and Tyler Greene in their individual and official capacities (along with Murray, referred in the Complaint as the "Police Defendants). (Id. at pp. 1-2).

Plaintiff has also sued the following North Carolina Judges in their individual and official capacities: Tommy Davis, Robert Martelle, Ellen Shelley, and Michelle McEntire. All of these judges work in North Carolina Judicial District 29A.

Plaintiff has also sued David Chambers, an attorney, and Ted Bell, the District Attorney for North Carolina Judicial District 29A. Chambers filed a motion to dismiss on October 15, 2021. (Doc. No. 7). RCSO, Sheriff Francis, Mode, Chavez-Perez, and Greene filed a motion to dismiss on October 28, 2021. (Doc. No. 9, 10).

Plaintiff is investigating the "Judicial Council," which according to Plaintiff consists of at least all sitting judges (except for Judge Corey McKinnon), the District Attorney, the Clerks of Court of Rutherford and McDowell Counties, and the District 29A Public Defender. (Doc. No. 1-1 ¶¶ 22, 26, 41). Plaintiff contends the Judicial Council is violating North Carolina's open meetings laws, public records laws, due process, unspecified court rules and procedures, and unspecified public corruption statutes that constitute criminal offenses. (Id. ¶ 29). Pursuant to his independent investigation, Plaintiff directed third parties to conduct surveillance on the State Defendants and intercept the State Defendants' communications. (Id. ¶¶ 32, 39–41).

Plaintiff alleges that, in response to his independent investigations, the Police Defendants obtained a search warrant, signed by Defendant Davis upon "false assertions" made by the Police

2

Defendants, to search electronic devices of Trevor Pittman, a bail bondsman (hereinafter "the Pittman warrant"). (Id. ¶¶ 50–55, 196). On July 31, 2020, the Police Defendants seized Pittman's computer, phone, and paper files pursuant to the search warrant. (Id. ¶¶ 56, 66). Throughout the search, Pittman spoke freely with law enforcement officers and did not inform anyone he was represented by Plaintiff, nor did he assert attorney-client privilege. (Id. ¶¶ 50–66). After the search was complete, Plaintiff instructed the Police Defendants not to review any communications, asserting they were protected by attorney-client privilege between Plaintiff and Pittman and Plaintiff and another attorney. (Id. ¶ 67).

Plaintiff alleges the Police Defendants then "distributed electronic communications between Plaintiff and Pittman to all Defendants." (Id. ¶¶ 72–73). Among the materials seized pursuant to the Pittman warrant were evidence of Plaintiff's directed surveillance of the State Defendants, the intercepted text messages of the State Defendants, and a text message from Plaintiff to Pittman instructing him to "immediately" send the information to "two outside investigatory agencies . . . ." (Id. ¶ 75). The materials seized from Pittman also included interviews between Plaintiff and Tina VanBuskirk, another alleged client of Plaintiff's, wherein VanBuskirk "detailed pervasive corruption and unlawful practices of previous and current government officials and attorneys, including members of the Judicial Council and Defendant Chambers. . ." (Id. ¶ 74). Media outlet RC Catalyst published this information in a series of articles, accusing the State Defendants of unlawful and corrupt conduct. (Id. ¶ 231–33).

Plaintiff alleges the State Defendants then retaliated against Plaintiff for his investigations by "recusing, threatening Plaintiff's clients, threatening Plaintiff directly, etc." (Id. ¶ 234). On or about August 10, 2020, Defendants Davis, Martelle, and Shelley sent individual letters to Plaintiff, Defendant Bell, the Rutherford and McDowell County Clerks of Court, and

3

the Department of Social Services, stating that each judge was recusing themselves from hearing cases in which Plaintiff appeared or was a party. (Id. ¶ 95–96, Ex. S). Additionally, Defendant McEntire informed Plaintiff that she was also recusing from all of Plaintiff's cases. (Id., Ex. S). Judge Corey McKinnon, a recently elected district court judge in District 29A, has not recused from Plaintiff's cases. (Id. ¶ 136(ss)). Plaintiff alleges the State Defendants have "refused to secure visiting judges" to hear Plaintiff's cases. (Id. ¶136(rr), Ex. S). Plaintiff asserts that he cannot practice law, has been forced to expend time and resources working for his clients, and is forced to repeatedly perform work for free due to the judicial recusals. (Id. ¶ 137, 145).

Plaintiff brings the following claims for relief: (1) declaratory judgment and/or injunctive relief pursuant to N.C. GEN. STAT. § 143-318.16-143-318.16A, alleging the "Judicial Council" violated the North Carolina Open Meetings Act, against Defendants Davis, Martelle, Shelley, McEntire, and Bell; (2) North Carolina Constitutional claims alleging violation of Article I, Secs. 1, 14, 18 and 19 of the North Carolina Declaration of Rights of the North Carolina Constitution by judicial recusal from presiding over Plaintiff's cases, denying him access to the courts, freedom of speech and press, due process and the fruits of his labor, against Defendants Davis, Martelle, Shelley, McEntire, and Bell; (3) a state tort claim for tortious interference with Plaintiff's contractual relationship with his clients, against Defendants Davis, Martelle, Shelley, McEntire, and Bell; (4) a violation of N.C. GEN. STAT. § 15A-286 et seq., by unlawfully listening to recordings seized pursuant to a search warrant, against all Defendants; (5) a state law claim for civil conspiracy, alleging the State Defendants conspired with each other and the other Defendants to determine the content of Plaintiff's independent investigations and to retaliate against Plaintiff for his independent investigations, against all Defendants; (6) a state law claim for abuse of process related to the Pittman warrant and another warrant, against Police

4

Defendants and State Defendants Davis and Bell; (7) a state tort claim for invasion of privacy, against all Defendants; (8) a 42 U.S.C. § 1983 claim, alleging Fourth and Fourteenth Amendment violations related to materials seized pursuant to a search warrant, against all Defendants; (9) a 42 U.S.C. § 1983 claim, alleging First and Fourteenth Amendment violations related to alleged retaliatory actions done for the purpose of censoring and punishing Plaintiff, against all Defendants; (10) a Monell liability claim against Defendant Rutherford County Sheriff's Office and Defendant Francis based on failure to train and supervise and under Article 19 of the North Carolina Declaration of Rights. For relief, Plaintiff seeks compensatory damages, punitive damages, attorney fees and costs, and a declaration that the recusals by the named Defendant judges are violating Plaintiff's state and federal constitutional rights and an order mandating relief so that the courts are open and available to hear Plaintiff's and his client's cases.

The Court held a hearing on the motions to dismiss on January 31, 2022. This matter is ripe for disposition.

## II. STANDARD OF REVIEW

Defendants have filed motions to dismiss, pursuant to Rule 12(b)(1), 12(b)(2), and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This Court must dismiss all or part of a complaint over which it lacks subject matter and personal jurisdiction. FED. R. CIV. P. 12(b)(1) and (2). This threshold question shall be addressed by the court before considering the merits of the case. Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). Plaintiff has the burden of proving that jurisdiction exists. Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

A motion to dismiss based on sovereign immunity is a jurisdictional issue; whether sovereign immunity is grounded in a lack of subject matter jurisdiction or personal jurisdiction is unsettled in North Carolina. See M Series Rebuild, LLC v. Town of Mount Pleasant, Inc., 222 N.C. App. 59, 59 (2012). Likewise, "Eleventh Amendment immunity has attributes of both subject-matter and personal jurisdiction." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 480 (4th Cir. 2005).

In reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true all of the factual allegations in the Complaint and draw all reasonable inferences in the light most favorable to the plaintiff. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). However, to survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level," with the complaint having "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). A complaint may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Id. at 679 (citations omitted). While the Court may construe Plaintiff's complaint liberally because he is a pro se plaintiff, the complaint must still allege "'facts sufficient to state all the elements of [his] claim'" to survive a motion to dismiss. Williams v. Wal-Mart Stores East, L.P., No. 5:18-CV-33-BO, 2018 WL 3341181, at *2 (E.D.N.C. July 6, 2018) (quoting Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003)).

## III. DISCUSSION

### A. Plaintiffs' Federal Claims against Defendants in their Official Capacities

The Court first finds that all of Plaintiff's claims arising under federal law against the State Defendants in their official capacities that seek monetary relief (Claims Eight and Nine) are barred by the Eleventh Amendment to the United States Constitution. The Eleventh Amendment bars suits brought in federal courts by a state's own citizens or the citizens of another state to the extent the suit seeks retrospective relief, including damages, against an unconsenting state. See Edelman v. Jordan, 415 U.S. 651, 662–68 (1974) (explaining that Ex Parte Young, 209 U.S. 123 (1908) and subsequent Supreme Court cases have limited relief against unconsenting states to prospective injunctive relief necessary to comply with federal law). Because a suit against a state official in his or her official capacity "is no different from a suit against the State itself," the Eleventh Amendment also bars suits brought in federal court that seek monetary relief from state officials in their official capacity. Will v. Mich. Dep't of State Police, 491 U.S. 59, 71 (1989); see also Biggs v. Meadows, 66 F.3d 56, 61 (4th Cir. 1995) (noting that compensatory or punitive damages are unavailable as relief in official capacity suits). While Congress may abrogate a state's Eleventh Amendment immunity in certain limited circumstances, the Supreme Court has determined that Congress did not intend to abrogate Eleventh Amendment immunity when it enacted 42 U.S.C. § 1983. Will, 491 U.S. at 66.

Here, the State Defendants (the Defendant judges Davis, Martelle, Shelley, and McEntire and district attorney Todd Bell) are clearly state officers. See N.C. Const. art. IV, § 2, 10, 19 (establishing that superior and district court judges and district attorneys are officers of the state); N.C. GEN. STAT. § 7A-4, -40, -41, -60, 130 (2021). Accordingly, the Eleventh Amendment bars Claim Eight and the official capacity claim in Claim Nine because they seek monetary damages

7

against state officers and there is no abrogation of Eleventh Amendment immunity or consent to the suit.

## B. Plaintiff's Federal Claims against the Defendant Judges

In support of his federal claims against the Defendant judges, Plaintiff asserts that Defendants Davis, Martelle, McEntire, Shelley (the "Judicial Defendants") recused themselves from Plaintiff's cases because they were angry about Plaintiff's independent investigations and the reporting of those independent investigations to outside investigators and the series of articles RC Catalyst. Plaintiff also complains that he has been deprived from appealing any of the recusals and that the Judicial Defendants have not provided Plaintiff a basis for their recusals.

It is well established that judges, in exercising the authority vested in them, are absolutely immune from civil lawsuits for money damages. Dean v. Shirer, 547 F.2d 227, 231 (4th Cir. 1976). Judicial immunity applies to judicial action taken in error, done maliciously, or in excess of authority. Stump v. Sparkman, 435 U.S. 349, 355–56 (1978). An act by a judge is "judicial" when it is "normally performed by a judge and ... the parties dealt with the judge in his judicial capacity." King v. Myers, 973 F.2d 354, 357 (4th Cir. 1992). Here, a judicial recusal is an act that can only be performed by the judge, and by its very essence, is one taken by the judge in his or her judicial capacity. In sum, the Judicial Defendants are afforded absolute judicial immunity as to any claim premised on the judicial recusals. Thus, Plaintiff's federal claims against the Judicial Defendants are dismissed.

## C. Plaintiff's Federal Claims against Defendant Attorney Chambers

Plaintiff also purports to bring claims of violations of his federal constitutional rights against Defendant Chambers. Title 42, Section 1983 of the United States Code provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . .

8

subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983.

To establish liability under § 1983, the Plaintiff must affirmatively show that Defendants "acted personally in the deprivation of the plaintiff's rights." Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) (internal citations omitted). As a result, there must be some allegation of wrongdoing or involvement against him to assert an individual capacity claim against them. Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1997).

As its plain language indicates, Section 1983 claims can only be brought against persons who are acting under color of state law. See Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49–50 (1999). Because Defendant Chambers is a private attorney, he is simply not subject to suit under Section 1983. In any event, Plaintiff has not alleged any cognizable legal claims against Defendant Chambers.

**D. Plaintiff's Eighth Claim for Relief Alleging Claims of Fourth and Fourteenth Amendment Violations Based on Defendants' Alleged Interference with the Attorney-Client Privilege and the Execution of Search Warrant Against Certain Alleged Clients of Plaintiff**

    **1.    Plaintiff's Claims against the Police Defendants**

Next, Plaintiff brings claims of violations of the Fourth and Fourteenth Amendment against Defendants Rutherford County Sheriff's Office ("RCSO"), Rutherford County Sheriff Chris Francis, and RCSO deputies Jamie Mode, Wilmer Chavez-Perez, Chad Murray and Tyler Greene in their individual and official capacities (referred in the Complaint as the "Police Defendants), contending that, in executing search warrants signed by a North Carolina Superior

9

Court Judge, the Police Defendants violated Plaintiff's Constitutional rights. Plaintiff states "Police Defendants…have engaged in relentless efforts to obtain attorney-client privileged information from Plaintiff, Plaintiff's clients, and individuals that Plaintiff has worked on the investigations discussed herein by unlawfully searching and seizing information through the unlawful use of search warrants, arrests, access of electronic communications and accounts, and cell-site simulators." See (Doc. No. 1-1 at ¶ 216).

Plaintiff brings a Fourth Amendment claim against Defendants through the due process clause of the Fourteenth Amendment. The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. The Due Process Clause of the Fourteenth Amendment places upon state governments the same restrictions that the Fourth Amendment imposes on the federal government. Mapp v. Ohio, 367 U.S. 643, 654-55 (1961).

"The protections of the Fourth Amendment are triggered when an individual seeking refuge under the Fourth Amendment 'has a legitimate expectation of privacy in the invaded place' or the item seized." Doe v. Broderick, 225 F.3d 440, 450 (4th Cir. 2000) (quoting Rakas v. Illinois, 439 U.S. 128, 143 (1978)). "A legitimate expectation of privacy exists when the individual seeking Fourth Amendment protection maintains a subjective expectation of privacy in the area searched that society is willing to recognize as reasonable." Id.

Plaintiff has failed to state a Fourth Amendment claim against Defendants based on his allegations that they violated his attorney-client privilege. The client, not the attorney, is the holder of the attorney-client privilege. Hawkins v. Stables, 148 F.3d 379, 384 (4th Cir. 1998). The privilege applies only if (1) the asserted holder of the privilege is or sought to become a

10

Case 1:21-cv-00271-MOC-WCM   Document 27   Filed 02/16/22   Page 10 of 17

client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. United States v. Jones, 696 F.2d 1069, 1072 (4th Cir. 1982). The burden is on the proponent of the attorney-client privilege to demonstrate its applicability. Id.

Claims by a party that conversations intercepted by the government violate the subjective expectation of privacy for attorney-client communications require a showing that the conversations were made in furtherance of the attorney-client relationship. See, e.g., Gennusa v. Canova, 748 F.3d 1103, 1111 (11th Cir. 2014). Here, Plaintiff was not the party subject to the allegedly improper search executed by Murray; Trevon Pittman was. Trevor Pittman, Plaintiff's alleged client, has not filed a claim against Murray. Plaintiff has not made any attempt to establish that he and Pittman were in an attorney-client relationship, and no facts are presented to show when the alleged relationship was formed or why Pittman sought to engage Plaintiff has his counsel. Most importantly, Plaintiff's allegations reveal that the intercepted communications had nothing to do with an attorney-client relationship, and therefore Plaintiff had no subjective expectation of privacy as to those communications.

Plaintiff alleges that his communications with Pittman included his text messages to Pittman that he was meeting with the United States Drug Enforcement Agency "discussing these issues" related to their independent investigation of the Police Defendants. These allegations do not meet the plausibility requirement for a facially valid pleading under Twombly and Iqbal. All

11

the allegations show is that Plaintiff and others were allegedly conducting an independent investigation of the Police Defendants that included the consistent and voluntary exchange of information regarding their investigation with each other and third parties, including the United States Drug Enforcement Agency. As such, these communications are not attorney-client communications which are entitled to a subjective expectation of privacy.

Plaintiff also alleges that during the search of Pittman's electronics, Police Defendants improperly obtained communications between Plaintiff and Tina VanBuskirk. Plaintiff is not entitled to the subjective expectation that his conversation with VanBuskirk was protected the attorney-client privilege in light of the conversation being in Pittman's possession, which is how Police Defendants obtained the conversation. Any such expectation of privacy was waived when Plaintiff and/or VanBuskirk agreed to share the substance of their communications with Pittman, a third party. Accordingly, this fact does support a showing of a violation Plaintiff's Fourth Amendment rights.

Another discovered communication between Pittman and Plaintiff explained that "the information needed to be immediately sent to two outside investigatory agencies (and it was), thereby leaving no questions as to the purpose of why this information was assembled." See (Doc. No. 1-1 at ¶ 75). While questions remain as to the purpose of Plaintiff's independent investigation of Police Defendants, there is no question that Plaintiff and Pittman waived any attorney-client privilege as to those communications when they sent the information to two unnamed "outside investigatory agencies." Again, Plaintiff cannot then prove a subjective expectation of privacy in those communications. The substance of the communications was willfully, voluntarily, and repeatedly disseminated to third parties by Plaintiff and/or his alleged clients, thereby waiving the protection of the attorney-client privilege.

12

Finally, Plaintiff tries to buttress his Fourth Amendment claims with conclusory assertions that the Police Defendants unlawfully employed the use of cell-site simulators to secretly monitor Plaintiff's communications. These allegations also wholly fail to meet the Twombly and Iqbal pleading requirement of plausibility. Plaintiff simply presents no times, dates, locations, or specific communications to support the cell-site simulator allegations. Allegations lacking even a modicum of factual specificity cannot establish plausibility. As the Supreme Court stated: "a plaintiff ... must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676.

### 2. Plaintiff's Claims against District Attorney Todd Bell

Plaintiff has also filed his Eighth Claim against District Attorney Todd Bell. First, as to Bell, Plaintiff alleges that Defendant Bell seized property through an unlawful search warrant. Plaintiff also alleges that Defendant Bell used information that Plaintiff believes is protected by attorney-client privileged, to charge an unnamed client of Plaintiff's for the purpose of preventing the unnamed client from providing information as to the Police Defendants' alleged misconduct.

Defendant Bell's initiation of criminal prosecutions are shielded by absolute prosecutorial immunity. Under the doctrine of absolute prosecutorial immunity, prosecuting attorneys enjoy absolute immunity when performing prosecutorial functions, as opposed to investigative or administrative ones. Imbler v. Pachtman, 424 U.S. 409, 430 (1976). Defendant Bell's actions as relates to applying for a search warrant and reviewing the materials collected pursuant to a search warrant for purposes of determining whether to prosecute someone involve the prosecutor's "role as advocate for the State," rather than his role as "administrator or

13

investigative officer." Burns v. Reed, 500 U.S. 478, 491–92 (1991) (finding prosecutor entitled to absolute immunity for supporting the application for a search warrant); Imbler, 424 U.S. at 431 n.33 (explaining that prosecutorial immunity extends to conduct preliminary to the initiation of a prosecution and actions apart from the courtroom).

In sum, for the reasons stated herein, Plaintiff's federal claims as set forth in his Eighth Claim are dismissed.

### D. Plaintiff's Ninth Claim for Relief Alleging a First Amendment Retaliation Claim

Plaintiff's ninth claim for relief sets forth a First Amendment retaliation claim against all Defendants. Plaintiff claims his investigation into the alleged unlawful practices of the Police Defendants resulted in retaliatory actions such as seizing information from Plaintiff, Plaintiff's clients, and other individuals for the purpose of violating Plaintiff's First Amendment rights. (See Doc. No. 1-1 ¶ 233).

A First Amendment retaliation claim under 42 U.S.C. § 1983 requires a showing of three elements: (1) the plaintiff engaged in constitutionally protected First Amendment activity, (2) the defendant took an action that adversely affected that protected activity, and (3) there was a causal relationship between the plaintiff's protected activity and the defendant's conduct. Booker v. S.C. Dep't of Corr., 855 F.3d 533, 537 (4th Cir. 2017). "For purposes of a First Amendment retaliation claim under § 1983, a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017) (quoting Wash. v. Cnty. of Rockland, 373 F.3d 310, 320 (2d Cir. 2004)).

The thrust of Plaintiff's factual basis for this allegation is that Defendants (specifically Murray and the Police Defendants) colluded with Plaintiff's clients or potential clients, allegedly

14

encouraging them take certain actions, including "not to speak with Plaintiff," "not retain Plaintiff to represent them," and to provide to Police Defendants "information (even if fabricated) that Police Defendants could use to pursue any criminal charges to silence Plaintiff." See (Doc. No 1-1 at ¶ 93). Plaintiff adds that "Police Defendants have interfered with contractual relations between Plaintiff and his clients by threatening and enticing many of Plaintiff's current clients to terminate legal relationships with Plaintiff" and that "Plaintiff had contractual relationship[s] (as well as attorney-client relationships that are contractual in nature) with many clients that, after being threatened and/or enticed by Police Defendants terminated such relationship with Plaintiff." (Id. at ¶¶ 155–56). Plaintiff claims that Police Defendants took these alleged actions because they "knew of the contractual relationships," and that "Plaintiff has suffered significant financial harm" as a result of these actions. (Id. at ¶¶ 157, 159).

Here, Plaintiff has not provided the name of a single client who has terminated his or her relationship with Plaintiff, information which would be in Plaintiff's sole possession. Rather than provide any such example, Plaintiff merely offers that "many" of his clients have terminated their attorney-client relationships with him because of the Police Defendants' alleged retaliation. See (Doc. No. 1-1 at ¶ 155). Plaintiff has similarly failed to offer any facts to show that any of the Defendants manufactured, or attempted to manufacture, evidence in retaliation of Plaintiff's independent investigation. Plaintiff has simply failed to allege facts that support a claim of First Amendment retaliation. See, e.g., Johnson v. Allen, 416 F. Supp. 3d 550, 563–64 (E.D.N.C. 2018). For this reason, the Court dismisses Plaintiff's Eighth Claim for relief as to all Defendants.

### E. **Plaintiff's Tenth Claim: Monell Liability Against Defendants Sheriff Francis and the Rutherford County Sheriff's Office**

In his tenth claim for relief, Plaintiff seeks to recover damages under 42 U.S.C. § 1983 for Monell claims against the Rutherford County Sheriff's Office ("RCSO") and Sheriff Francis for their allegedly unconstitutional policies and customs, and failure to properly train or supervise members. See (Doc. No. 1-1 at ¶¶ 241–57).

First, the RCSO is not a legal entity capable of being sued. The capacity of an entity to sue or be sued is "determined by the law of the state where the court is located." FED. R. CIV. P. 17(b). It is well established in North Carolina that "unless a statute provides to the contrary, only persons in being may be sued." Coleman v. Cooper, 89 N.C. App. 188, 192 (1988). As there is no statute authorizing suit against RCSO, it is entitled to dismissal as a matter of law. Parker v. Bladen Cnty., 583 F. Supp. 2d 736, 740 (E.D.N.C. 2008).

Second, it is well-established that there can be no municipal liability without an underlying violation of the plaintiff's rights. Grayson v. Peed, 195 F.3d 692, 697 (4th Cir. 1999). As the Court has already found that Plaintiff has not alleged a cognizable claim of the violation of his rights, there simply can be no municipal liability under Monell.

For this reason, the Court dismisses Plaintiff's Tenth Claim for relief as to all Defendants.

**F. Plaintiff's Remaining State Law Claims**

For the reasons discussed above, the Court is dismissing all of Plaintiff's federal claims against all Defendants. As to the remaining state law claims, the Court declines to exercise jurisdiction over the supplemental state law claims.[1] See 28 U.S.C. § 1367(c)(3).

---

[1] Defendants request that the Court address the remaining state law claims on the merits so they are not forced to relitigate them in state court in the event that Plaintiff refiles his state law claims there. Of course, it was Defendants' decision to remove this action from state court in the first place. Although it was clearly Defendants' right to remove this action, they also could have just as well litigated Plaintiff's claims in Rutherford County Superior Court.

## IV.  CONCLUSION

For the reasons stated herein, Defendants' motion to dismiss is granted to the extent that Plaintiff's federal claims are dismissed. The Court declines to exercise jurisdiction over the remaining state law claims.

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motions to Dismiss, (Doc. Nos. 7, 9, 14, 19), are **GRANTED**.

2. Plaintiff's federal claims are dismissed. The Court declines to exercise jurisdiction over the remaining state law claims.

3. The Clerk is directed to terminate this action.

Signed: February 16, 2022

Max O. Cogburn Jr.
United States District Judge